455 A.2d 1204

**Martha S. HAMIL, Administratrix of the Estate of Kenneth C. Hamil, Appellant,**

v.

**H. Woodrow BASHLINE, Don L. Bashline, Wayne L. Bashline, Vincent F. D'Angelo, Leslie A. McClimans, John L. Johnston, and Arthur M. Linfante, T/A The Bashline Hospital Association, Ltd.**

Superior Court of Pennsylvania.

Argued June 17, 1982.

Filed Dec. 23, 1982.

Reargument Denied March 4, 1983.

Petition for Allowance of Appeal
Denied June 1, 1983.

Henry S. Moore, Grove City, for appellant.

George Hardy Rowley, Greenville, for appellees.

Before BROSKY, JOHNSON and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The history of this wrongful death action is long and tortuous. The present appeal marks the third appearance of this litigation before this Court, following the third trial in the case. As in prior appeals, the Plaintiff is again the Appellant, seeking a reversal and new trial, based upon claims of trial court error.

It is appropriate at the outset that we review the procedural history of the litigation. The first trial of this case, like those that followed, involved wrongful death and survival claims by the Plaintiff as administratrix of her deceased husband's estate, against the Defendant-Appellees, trading as The Bashline Hospital Association. The Plaintiff's cause of action, as more fully described below, was based upon events which occurred when she took her husband to the Defendants' hospital on May 31, 1968, as a result of his complaints of severe chest pains. After receiving little attention or care at the Defendants' facility, the Plaintiff took her husband to the office of another physician, where he shortly thereafter died, the victim of a heart attack.

At the first trial, the court entered a judgment upon a directed verdict for the Defendants. The Plaintiff appealed and our Court subsequently reversed and remanded the case for a new trial. See *Hamil v. Bashline*, 224 Pa.Super. 407, 307 A.2d 57 (1973), wherein this Court ruled that the lower court had erred in its conclusions on to the issue of causation. On that basis, our Court found that the Plaintiff had presented a *prima facie* case of negligence, and therefore held that the directed verdict for the Defendants had been improper.

No appeal was taken from that 1973 decision, and a second trial was subsequently held in the lower court. At that trial, the jury was asked to render special findings. It concluded that while the Defendants were negligent, such negligence was not the proximate cause of the decedent's death. Again, the Plaintiff filed an appeal to our Court, alleging that the trial court had failed to adhere to the 1973 holding by our Court on the first appeal. In *Hamil v. Bashline*, 243 Pa.Super. 227, 364 A.2d 1366 (1976), a plurality of this Court affirmed the defense verdict, on the ground that our Court had erred in ordering a new trial in the 1973 decision. The Plaintiff then appealed to the Supreme Court, which reversed and ordered a new trial. See *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978). The Supreme

Court's decision was based essentially upon the causation issue and the Court clearly enunciated rules to be applied in future cases in our Commonwealth involving medical proof of causation.[1]

The third trial was then held in the lower court. The Plaintiff produced the same evidence as had been adduced at the prior two trials. A recitation of that evidence is appropriate here. The record shows that at approximately 11:30 p.m. on May 31, 1968, the Plaintiff called The Bashline Hospital to report that her husband was suffering from severe chest pains. She talked to the night supervisor, Margaret Montgomery, who advised her to bring her husband into the Hospital as a doctor was present and her husband would be given medical attention. The Plaintiff transported her husband to the Hospital, arriving at 12:15 a.m. After she arrived she learned that the doctor who was assigned to emergency duty was not there and could not be located. However, Dr. John L. Johnson, one of the Defendants, had been called to the Hospital earlier that night to treat one of his own patients, and was present in the facility at the time of Mr. Hamil's arrival. When advised of Mr. Hamil's condition, Dr. Johnston took Mr. Hamil's pulse, but did not speak to him or his wife or perform any other personal diagnostic procedure. Dr. Johnston ordered an electrocardiogram ("EKG") taken. A hospital aide, Sadie Miller, made an attempt to comply with this order but the EKG machine failed to operate. Dr. Johnson tried unsuccessfully to get it to operate. The apparent reason for the failure was that the machine had been plugged into an electrical outlet which was known to have been defective in the past. When Dr. Johnston was advised of the malfunction of the EKG machine, he ordered that another machine be used and then left the hospital. However, a second EKG machine could not be located. Upon being advised that there were no other physicians at the hospital to examine or

1. It is not necessary to our decision in the instant case to reiterate or explain the rules of medical evidence and causation, and we merely refer the reader to the Supreme Court's thorough discussion of these matters in its 1978 Opinion in this litigation.

treat her husband, Mrs. Hamil then transported her husband to the office of another physician in Harrisville, Pennsylvania. The record indicates that Mr. and Mrs. Hamil left the Bashline Hospital approximately one hour after the initial time of their arrival at the emergency room. Shortly after his arrival in the office of the doctor in Harrisville, and while in the course of an EKG exam, Mr. Hamil died of ventricular fibrillation, a complication of a type of heart attack properly described as a myocardial infarction. It was further established that at the time Mr. Hamil was at the Defendants' hospital, the facility had standard equipment for the treatment of heart attacks and ventricular fibrillation, including beds, oxygen, pain-relieving drugs and equipment to effect defibrillation. Further, nursing care was available and a cardiologist was on call.

The Plaintiff's basic claim, as set forth in her Complaint in this litigation, is that the Defendants were negligent in failing to provide proper care to the decedent after having undertaken to do so. Over the objection of the Plaintiff, the trial judge submitted the following special interrogatories to be answered by the jury:

1. "Was Margaret Montgomery negligent?
2. "Was Dr. John L. Johnston negligent?
3. "Was Sadie Miller negligent?
4. "Was Martha S. Hamil negligent?"

Further, in its charge, the lower court judge repeatedly separated Dr. Johnston from the other Defendants in discussing possible liability. The Plaintiff exercised timely objections to these actions by the trial judge. The record shows that the Plaintiff also submitted numerous points for charge which were refused by the lower court. Such points will be discussed, as appropriate, later in this Opinion.

The Plaintiff urgently contends that the trial court acted improperly in submitting the case to the jury on the four special interrogatories set forth above. She reasons that a case was established for the jury to decide whether the combined inaction of the Defendants in the operation of their hospital was a failure to exercise due care in rendering

medical attention to her deceased husband. Thus, she maintains that the lower court committed reversible error in ruling that a judgment could be rendered for the Plaintiff only if one of the three Bashline Hospital personnel who had contact with Mr. Hamil on the night of his death had performed in a negligent manner or, in the alternative, had negligently failed to act. Despite our great reluctance to require the parties to this litigation to proceed through a fourth trial of this case, and mindful of the time, expense, and potential hardship which may be involved, we are nevertheless compelled to strongly agree with the Plaintiff, and to conclude that a new trial is again mandated.

The reasons for this conclusion should be readily evident. The Plaintiff brought her action against seven Defendants who were jointly operating a hospital facility. Although the Plaintiff's Complaint alleges specific negligence by Ms. Montgomery and Dr. Johnston, such allegations were not the only basis asserted for a recovery against the Defendants. The Complaint also asserted that the Defendants, their members, agents, servants, and employees exercised a lack of due care in failing to have a qualified doctor available to administer to Mr. Hamil on the night in question, in failing to have the electrocardiograph in an operating condition, in failing to locate a second machine when the first did not work, and, in failing to provide competent medical care and use ordinary and accepted procedures that would have possibly saved Mr. Hamil's life. Moreover, no specific act of negligence by aide Sadie Miller was alleged in the Complaint.

As was noted earlier, the decedent was brought into the facility at the express invitation of one of its employees, the night supervisor, Margaret Montgomery. Mr. Hamil was not turned away from the facility after his arrival, but was essentially provided with no medical attention for the critical hour in which he remained there.[2] Even though Mrs.

2. See the earlier opinions of this Court and the Supreme Court regarding the medical proof which was offered to support the Plaintiff's position that if proper care had been rendered in a timely

Hamil was advised that her husband would receive medical attention at the Defendants' hospital, the one physician who was there and could have treated him left the facility without any thorough diagnostic attention to Mr. Hamil, and without examining the results of the EKG test which had been ordered. The physician who was to handle emergencies that night was simply unavailable. Other factors of importance to the Plaintiff's theory of the case were the evidence of the faulty operation of the EKG equipment, the apparent absence of a back-up EKG machine, and/or the defective or non-operative electrical outlet from which power was sought for the operation of the EKG equipment. All of these factors would have been supportive of the Plaintiff's theory of negligence, yet it is clear that because of the special interrogatories submitted to the jurors, such matters could not have been considered by them.

For example, even if the jurors would have concluded that less than reasonable care was shown by the absence of the physician assigned to the emergency room or by the failure of the EKG machine to work, the jurors were not allowed to make findings of negligence or reach a verdict based upon such grounds, for they were limited to resolving the isolated issues of whether three particular individuals were negligent that night. Stated another way, the absence of personal negligence on the part of Dr. Johnston and/or the two Hospital employees could not be held to preclude a finding of negligence on the part of all of the Defendants in their operation of the Hospital, under the facts presented in this case. Since the Plaintiff was deprived of the opportunity to have the jury render a verdict regarding the possible joint liability of the Defendants in the operation of their Hospital, on such grounds, it is clear that the Plaintiff is entitled to a new trial.

During the second trial of this case, the lower court submitted similar special questions to the jury, to which the

manner, the probability was that Mr. Hamil might not have suffered his death that night. That testimony was central to the issue of causation, which was fully discussed in those prior opinions.

Plaintiff took exception. In denying the Plaintiff's motion for a new trial after the third trial, the lower court ruled that the Plaintiff waived the right to again allege error as to these questions, since she failed to raise them as an issue on her second appeal to this Court or on the subsequent appeal she filed to the Supreme Court.[3] The lower court cited the "law of the case doctrine" as support for its finding that the issue had been waived. We find that the lower court's reliance upon that doctrine was incorrect. The Supreme Court has explained the rule: "The doctrine of 'the law of the case' is that, when an *appellate court* has *considered and decided* a question submitted to it on appeal, it will not on a subsequent appeal on another phase of the same case reverse its previous *ruling* even though convinced it was erroneous". *Burke v. Pittsburgh Limestone Corp.*, 375 Pa. 390, 394, 100 A.2d 595, 598 (1953), citing *Southern Railway Co. v. Clift*, 260 U.S. 316, 319, 43 S.Ct. 126, 127, 67 L.Ed. 283. The Court has also stated that: "Under the law of the case doctrine, which *only applies to appellate courts,* a court will refuse to reconsider its own *rulings of law* on a subsequent appeal of the same case." *Kuchinic v. McCrory*, 422 Pa. 620, 625 n. 7, 222 A.2d 897, 900 n. 7 (1966) (emphasis added). The special jury questions before us on the present appeal have not previously been placed in issue either before our Court or the Supreme Court, and there has been no prior appellate ruling on them. Even if there had been some ruling thereon, the trial court obviously could not invoke the appellate rule of the case doctrine. Thus, the lower court was incorrect in concluding that the issue of the propriety of submitting the four questions to the jury was somehow waived as a result of that doctrine.

In normal circumstances, having decided that a reversal was mandated on the basis of one of the issues raised by an appellant, our Court, like other appellate courts, would avoid deciding any other issue presented. This case, how-

---

**3.** While concluding that the issue had been waived, the lower court went on to discuss the merits, and explained its rationale for submitting the four special questions to the jury.

ever, is not a "normal" one inasmuch as three trials have already been held and our reversal and remand will cause a fourth trial in lower court. In these highly unusual circumstances we deem it advisable to make further observations in this Opinion with respect to several other matters which are raised as issues by the Appellant, and which might present additional problems for the parties in the pending retrial of this case. These other points of contention all involve various instructions to the jurors to which the Plaintiff-Appellant took exception at trial and which are addressed by the parties on this appeal. The court's charge to the jury will certainly be modified in the forthcoming trial to a large extent as a result of our holding that it was improper for the court to have limited the jurors to answering four special interrogatories. We believe it would be beneficial to discuss those matters brought to our attention on this appeal which may again arise to create some problem in the retrial of this matter.

The Plaintiff has contended that the trial judge erred in repeatedly dealing in his charge with the liability of Dr. Johnston, separate and apart from the other Defendants. Further, the Plaintiff argues that the court also committed error in refusing the Plaintiff's ninth point for charge, which was: "All of the defendants, being members of the Association, are liable, jointly and severally, for the torts of any member or employee of the Association committed while acting within the ordinary course of operation of the Association." We believe it would be inappropriate for us, in the present contexts, to set forth specific wording for the lower court to use in its charge. We do want to express, however, that we would conclude that if the same evidence was again presented by the Plaintiff, it would appear to be proper to charge the jury on the possible joint as well as individual liability of all Defendants for the negligence of any Defendant or employee acting within the scope of his employment. Since Dr. Johnston was the only one of the Defendant physicians who was present at and participating in the incidents from which this cause of action arose, it is

clear that the Court will have to devote some part of the charge to any possible jury findings of specific negligence on his part. However, since all of the Defendants may be held liable based upon a general jury finding of an absence of due care in the treatment rendered by the Hospital to the decedent on the night in question, the joint liability of all Defendants cannot be ignored in the instructions which the Court will give. Further, the Court must be careful to explain to the jurors that Dr. Johnston may bear liability based not only on his own negligence, but also based upon an absence of due care by others which may be chargeable to all of the Defendants.

The Appellant also claims it was error for the lower court to affirm Defendants' point nineteen: "You cannot find the Bashline Hospital Association was negligent in failing to have a coronary care unit or in failing to having (sic) another electrocardiograph machine available." The Court refused Plaintiff's point number ten, which essentially stated that a hospital owes a duty to its patients and prospective patients to equip and maintain an emergency room with equipment which is customarily and ordinarily used in hospitals of the same general size in similar localities. Further, the Plaintiff's requested point stated that if such equipment is not available or readily accessible in the hospital and the evidence establishes that the unavailability or absence of the equipment contributed to or caused the disability or other condition complained of by the Plaintiff, then the Defendant Hospital would be negligent. We believe two observations are appropriate. First, the Defendants' Brief to our Court asserted that the supporting authority for the lower court's adoption of defense point nineteen was the decision in *Emory University v. Porter*, 103 Ga.App. 752, 120 S.E.2d 668 (1961). Our review of that decision leads us to the conclusion that it does not support Defendants' point nineteen. In fact, the Georgia Court stated: "A hospital owes to its patients only the duty of exercising ordinary care to furnish equipment and facilities reasonably suited to the uses intended and such as are in

general use under the same, or similar circumstances in hospitals in the area." 103 Ga.App. at 755, 120 S.E.2d at 670. Secondly, any instruction concerning this subject which the lower court may make to the jury in the forthcoming trial of this case should be modified to reflect the Supreme Court's ruling that the increased risk attributed to the failure to render reasonable services to another must be a substantial factor in bringing about the harm complained of. See *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978).

The Plaintiff also argues on this appeal that the lower court erred in affirming Defendants' points ten, eleven and twelve, which all involved the duty of the Bashline Hospital or Dr. Johnston to admit or furnish treatment to Mr. Hamil as a patient, or even to continue treatment once started. On these points, we refer the parties and the lower court to our discussion of the situation in this case in the separate Opinions of Judges Price and Spaeth in *Fabian v. Matzko*, 236 Pa.Super. 267, 344 A.2d 569 (1975). As noted there, and as reaffirmed by our own review of the record of the third trial in this litigation, the evidence did not appear to leave any question as to whether or not the Bashline Hospital accepted Mr. Hamil as a patient for diagnosis or undertook to render care to him on the night of his death. Therefore, it would seem improper to allow the jury to speculate upon this matter for if we assume that the same evidence is presented at the next trial, as it is clear that there was such an undertaking.

We remand this case to the lower court with the hope that this matter may be finally concluded with the forthcoming trial. The case has unfortunately presented the parties as well as the lower court with issues of great complexity. We are hopeful that the difficult problems inherent in the case may be more expeditiously resolved by our holding, as well as by the general observations we have made with regard to several questions raised by the jury instructions at the prior trial.

Reversed and remanded for new trial. Jurisdiction is not retained.