598 A.2d 41

Gordon R. BAILEY and Mary Bailey, His Wife, Appellees,

v.

PENNSYLVANIA ELECTRIC COMPANY,
a Corporation, Appellant.

Maurice A. MUTH, Executrix of the Estate of
William R. Muth, Jr., Deceased, Appellee,

v.

PENNSYLVANIA ELECTRIC COMPANY,
a Corporation, Appellant.

Superior Court of Pennsylvania.

Argued June 18, 1991.

Filed Oct. 11, 1991.

378

Raymond H. Conaway, Pittsburgh, for appellant (at 1608 and 1704).

Edward J. Balzarini, Pittsburgh, for appellees (at 1608 and 1704).

Before POPOVICH, JOHNSON and FORD ELLIOTT, JJ.

POPOVICH, Judge:

Before this Court are consolidated appeals from two orders entered in the Court of Common Pleas of Westmoreland County. The underlying cause of action is negligence. The appellees Gordon R. Bailey and Mary Bailey, his wife, sued the appellant Pennsylvania Electric Company ("Penelec") for personal injuries sustained as a result of a helicopter accident and for loss of consortium, respectively. The appellee Maurice A. Muth, Executrix of the Estate of William R. Muth, Jr., deceased, filed a wrongful death and survival action against Penelec for injuries arising out of the same accident. The factual and procedural history of this case is outlined below. Following review of Penelec's appellate issues, we affirm the trial court's orders.

This litigation arose following a helicopter crash. Gordon Bailey, who was piloting the plane, and William Muth, Jr., Bailey's co-worker, were employees of The Bill Muth Aircraft Co., Inc. and were contractually obligated to perform patrols of Penelec's electrical transmission and subtransmission lines. By means of aerial survey, Bailey and Muth were to observe the lines and report any notable defects to Penelec. *See* R.297a–301a, 998a–999a. As well, Muth Aircraft was to inspect supporting structures and rights of way. R.998a–999a.

On March 12, 1982, during a scheduled patrol of a Penelec 46Kv line, Bailey's aircraft collided with an intersecting 115Kv line. As a result of the impact, the helicopter plunged to the ground, causing Muth's death. Bailey survived, but he suffered severe, multiple injuries.

Following a two week trial, the jury returned a verdict in favor of the appellees. Bailey was deemed 35% contributorily negligent. Post-trial motions were filed, entertained and denied. Penelec filed a motion with the trial court seeking a supplemental opinion; its request was denied. Final judgment was entered on the record. This appeal ensued.

Penelec raises seven issues for our consideration, as set forth below.

1. Whether the trial court erred in refusing to grant Penelec's motion for judgment n.o.v. where there was no evidence that Penelec had notice of the alleged dangerous condition of the line crossing warning system or the particular 115Kv–46Kv line crossing? In the alternative, whether the court erred in denying Penelec's motion for a new trial based upon its refusal to charge the jury that in order to impose liability on Penelec, Appellees must have produced evidence that Penelec had notice of the alleged dangerous condition?

2. Whether the trial court erred in denying Penelec's motion for judgment n.o.v. where Appellees did not present evidence establishing [a] breach of the duty of care owed? In the alternative, whether the trial court erred in denying Penelec's motion for a new trial based upon its granting of Appellees' Points for Charge Nos. 3 and 4?

3. Whether the trial court erred in denying Penelec's motion for judgment n.o.v. because the evidence established that Penelec owed no duty to warn Appellees of the alleged dangerous condition? In the alternative, whether the trial court erred in denying Penelec's motion for a new trial based upon its refusal to grant Penelec's Points for Charge Nos. 16, 17, 18 and 19?

4. Whether the trial court erred in denying Penelec's motion for a new trial where the evidence established that Appellees' conduct was reckless? In the alternative, whether the trial court erred in denying Penelec's motion for a new trial based upon its refusal to grant Penelec's Points for Charge Nos. 32, 33 and 34?

5. Whether the trial court erred in denying Penelec's motion for judgment n.o.v. where there was no evidence that the existing warning system failed?

6. Whether the trial court erred in denying Penelec's motion for a new trial based on its refusal to grant Penelec's Point for Charge No. 36 which would have

informed the jury that the 115Kv line was not required to be marked?

7. Whether the trial court erred in granting Appellees' Petition for Delay Damages Pursuant to Pa.R.Civ.P. 238 for the reason that Rule 238 constitutes an unconstitutional exercise of the Pennsylvania Supreme Court's rule-making authority and violates Penelec's rights to due process and equal protection as guaranteed by the United States and Pennsylvania Constitutions?

Appellant's brief, at 3.

The record in this case is extensive. We have reviewed the applicable materials in light of the issues raised on appeal. As well, we have considered the relevant law, the parties' comprehensive briefs and the trial court's opinions. Although Penelec asserts that it was entitled to judgment *non obstante verdicto* or to a new trial, we must conclude that each of Penelec's claims is without merit. The law is established in this Commonwealth as to each of the queries posed by Penelec.

 Our standard of review of an order denying judgment n.o.v. is limited: we must determine whether there was sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemann–Siemag Aktiengesellschaft, et. al.,* 523 Pa. 1, 3–5, 564 A.2d 1244, 1246 (1989). *See also Cummings v. Borough of Nazareth,* 427 Pa. 14, 25–26, 233 A.2d 874, 881 (1967), *appeal after remand* 430 Pa. 255, 242 A.2d 460 (1968); *Ingrassia Construction Co., Inc. v. Walsh,* 337 Pa.Super. 58, 60–62, 486 A.2d 478, 480 (1984). In so doing, we must grant the verdict winner the benefit of every inference which reasonably may be drawn from the evidence. We also must reject all unfavorable testimony and inferences. *Ingrassia, supra. See also Lira v. Albert Einstein Medical Center,* 384 Pa.Super. 503, 507–09, 559 A.2d 550, 552 (1989); *Jewell v. Beckstine,* 255 Pa.Super. 238, 386 A.2d 597 (1978). Judgment n.o.v. may be granted only in clear cases, where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Gray v. H.C. Duke & Sons, Inc.,* 387 Pa.Super.

95, 563 A.2d 1201 (1989); *Frank v. Peckich,* 257 Pa.Super. 561, 391 A.2d 624 (1978). We note that judgment n.o.v. may not be employed to invade the province of the jury. Thus, where there is a question of fact to be resolved, this is the jury's function. *Trawick v. Nationwide Mutual Insurance Co.,* 242 Pa.Super. 271, 363 A.2d 1265 (1976).

Our standard of review of an order denying a motion for a new trial is whether the trial court clearly and palpably abused its discretion or committed an error of law which controlled the outcome of the case. *Stevenson v. General Motors Corp.,* 513 Pa. 411, 426–27, 521 A.2d 413, 420–21 (1987). *See Solomon v. Baum,* 126 Pa.Commw. 646, 560 A.2d 878 (1989). The trial court's order must be affirmed if there is record support for its decision. *See Stevenson, supra.*

With these guidelines in mind, we turn to Penelec's substantive arguments. Penelec asserts that judgment n.o.v. should have been directed in its favor because (a) it had no notice of a dangerous condition; (b) it did not have to maintain a high duty of care to the appellees, but rather, only an ordinary duty of care; (c) the appellees' conduct was reckless; and (d) there was no evidence that Penelec's warning system failed. Penelec further contends that the trial court erred in rejecting its proposed jury instruction that the 115Kv line did not require markings. Without repeating the arguments set forth by the litigants, suffice it to say that we have read each brief and reviewed each case cited by the parties. We agree with the appellees and the trial court that *Yoffee v. Pennsylvania Power & Light Co.,* 385 Pa. 520, 123 A.2d 636 (1956) controls the disposition of issues (a) and (b), above.

In *Yoffee,* the pilot of a single engine aircraft was flying over the Susquehanna River when he collided with a transmission line that was strung across the water at a height of 185 feet. In determining that the transmission line was a dangerous instrumentality that could, in the event of contact, cause death to a human being, the Penn-

sylvania Supreme Court held that the Power and Light Company had a duty to take all practicable precautions necessary to preserve life.

But the power company, of course, owed more than a negative duty to the deceased pilot. That a transmission line is a dangerous instrumentality is recognized everywhere. No matter where located it is a source of grave peril and the law requires that the possessor of such an instrumentality exercise a high degree of care: "Vigilance must always be commensurate with danger. A high degree of danger always calls for a high degree of care. The care to be exercised in a particular case must always be proportionate to the seriousness of the consequences which are reasonably to be anticipated as a result of the conduct in question." *MacDougall v. Pennsylvania Power & Light Co.*, 311 Pa. 387, 396, 166 A. 589, 592 [1933].

*Id.*, 385 Pa. at 536, 123 A.2d at 645. The court continued:

Did the defendant measure up to its responsibility in this regard? Was it negligent in the manner in which it erected and maintained its installation at Berry Mountain Gap? We said in *Adley Express Co. v. Willard*, 372 Pa. 252, 93 A.2d 676, 679 that: " 'The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm * * * resulting from his act' ".

*Id.*, 385 Pa. at 536, 123 A.2d at 645–46. Later, the court wrote:

Did the presence of the numerous air bases and the activities of the numerous airplanes in the vicinity of Millersburg constitute a situation which put the defendant company on notice that its transmission line could be an obstruction to air navigation? If it did, the defendant owed a high degree of care to aviators approaching or passing over that transmission line. If, in fact, its towers and transmission line were invisible to aviators using their normal faculties for detection, and if as a result of that invisibility or difficulty of detection, the pilot Levitz lost his life, the company would be responsible in dam-

ages to the administrator of his estate. If the owner of any instrumentality, equipment, or device has reason to believe or expect that an airplane will use the legalized unoccupied air space above his installation and he erects or permits to exist an obstruction which, without fault on the part of the aviator, will do damage to the pilot or his aircraft, the owner of the installation will be as responsible for the damage done the aircraft and its passengers as if he had shot down the aircraft.

*Yoffee,* 385 Pa. at 540–41, 123 A.2d at 648. By virtue of the holding in the *Yoffee* case alone, it is apparent that Penelec had requisite notice that its lines constituted a dangerous condition to fliers. *Yoffee* demonstrated that power lines may cause disaster if they are not properly marked. Furthermore, *Yoffee* established that where there is a likelihood that an aircraft will fly by a transmission line, harm is foreseeable. Therefore, it is imperative that a power company take the necessary precautions to identify and properly delineate the lines so as to avoid injury or death to the fliers.

Here, the fact that Bailey and Muth were retained to perform flight inspections for Penelec is sufficient proof that the power company was aware that aviation activities would be taking place over its lines. Furthermore, Penelec installed signs on the approaches (although the issue in this case centers around the signs' effectiveness) to warn the patrol pilots that utility poles and line crossings were in their flight paths.[1] By erecting the signs, the power company recognized that the lines created a potential hazard to pilots. If there was no danger in flying near the wires, then there would have been no need to post warning signs.

1. One of the central issues in this case was whether the line crossing warning system was adequate; to wit, whether the signs were sufficient in location, color and placement to alert a pilot that the transmission lines were in their way. The appellees allege in their complaint that their injuries resulted from Penelec's negligence, *inter alia,* in failing to warn them of a hidden danger, failing to install warning signs or markers on the approach path to the electrical line crossings and failing to adequately warn them of the locations of the line crossings. R.10a–11a, 18a.

Thus, it is clear that the power company had notice of a dangerous condition.[2] *See* R.585a, 1079a.

■ More basically, the power company was informed numerous times that "a more visible and identifiable color" should be used for the warning signs or that the utility poles should be painted to reflect that a dangerous instrumentality was close-by. *See generally* R.369a, 966a–1009a, 151a–153a, 165a–166a, 278a–279a, 383a–401a, 422a–426a, 437a–443a, 451a–465a, 470a–474a, 495a–497a. It was suggested by subcommittee report that danger signs be installed on the line crossings to warn pilots of the presence of electrical lines. R.389a. A complete review of the trial transcripts reveals that Penelec was well aware of the dangers inherent in maintaining power lines. R.438a–444a; 472a–474a. That the pilots did not give notice to Penelec that the signs were inadequate is not dispositive of the issues on appeal. Penelec knew that an aircraft would be flying over its lines. It knew, by the nature of its business and under the facts of this case, that proper warning signals were imperative, and crucial to preserving the well-

2. We reject Penelec's contention that it owed the appellees any less of a duty because the pilots were independent contractors, not everyday fliers. This issue was not specifically preserved in post-verdict motions. Therefore, it is waived. Pa.R.Civ.P. 227.1. *Cf. Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 414 A.2d 100 (1980); *Palenscar v. Michael J. Bobb, Inc.*, 439 Pa. 101, 266 A.2d 478 (1970) (discussing distinguishable situations involving contractors).

Moreover, we are not persuaded by Penelec's argument that it should not be penalized because the appellees hit its wire rather than a building (which assertedly would lessen the degree of care owed). The issue here is whether the lines were properly marked. Ample trial testimony showed that power lines are virtually invisible to a pilot unless they are marked. R. 165a–166a; 263a, 820a. The distinction between a wire and a building is obvious. Moreover, there is always a danger of electrocution where there are power lines. Thus, a high degree of care is required to prevent injury or fatalities.

Finally, we find that a lack of prior accidents is not dispositive of the issue of due care. *See Cummings v. Borough of Nazareth*, 427 Pa. 14, 19–20, 233 A.2d 874, 877–878 (1967), *appeal after remand* 430 Pa. 255, 242 A.2d 460 (1968). The conditions that existed on the Penelec property at the time of the instant accident constitute the only evidence before us. The jury assessed the circumstances as they related to this case. We will not disturb their fact-finding process or determinations.

being of those who flew over the property. *See Yoffee,* *supra,* 385 Pa. at 540–41, 123 A.2d at 647–48 (the notice requirement centers around the likelihood that an aircraft will fly in the vicinity of the dangerous wires; not necessarily around information supplied to the company by the pilots).[3] *Cf. Antonace v. Ferri Contracting Co., Inc.,* 320 Pa.Super. 519, 467 A.2d 833 (1983).

Similarly, the law clearly provides that where a dangerous instrumentality is present, a commensurate or high duty of care is required to protect those who might come into contact with that instrumentality. The owner is held to a high standard to implement adequate precautionary measures in order that the safety of others is preserved. *See Slater v. Pennsylvania Power Co.,* 383 Pa.Super. 509, 557 A.2d 368 (1989). *See also Jemison v. Pfeifer,* 397 Pa. 81, 89, 152 A.2d 697, 701 (1959). *See Geiger v. Schneyer,* 398 Pa. 69, 157 A.2d 56 (1959); *Malitovsky v. Harshaw Chemical Co.,* 360 Pa. 279, 61 A.2d 846 (1948) (both discussing high degrees of care).

 Under the *Yoffee* rationale, it is evident that Penelec was properly held to a high, not an ordinary, duty of care inasmuch as it is responsible for hundreds of high voltage lines over which pilots fly their aircrafts. It is axiomatic that warning signs must be highly visible and suitable to accomplish their purposes. As the trial court aptly noted:

**3.** Penelec states that the pilot was provided with a "day map" which depicted the lines to be patrolled and informed the reader of line crossings on the route. Penelec argues that Bailey flew the patrols for approximately 22 days before the accident occurred and never indicated that the map insufficiently warned him of the presence or location of line crossings. Appellant's brief, at 7. It is not our function to pass upon the validity of these assertions. We note, however, Bailey's testimony that the map was *not* a useful navigation tool. R.499a–502a; 530a–532a, 598a–601a. *See* R.261a–267a. Moreover, we do not find that Penelec is relieved of its responsibility to provide a safe working environment simply because it gave the pilots a map. *See* R.262a–263a; 500a–502a; 529a–536a. *See Yoffee, supra,* 385 Pa. at 536, 123 A.2d at 645 (power company "owed more than a negative duty to the deceased pilot").

The defendant contends that it did not owe the highest degree of care to the plaintiffs, but only an ordinary degree of care, claiming that the highest degree of care is required only where the transmission lines pose a danger of electrocution. The *Yoffee* court, however, placed the highest degree of care standard upon the utility where there was an air strike, not an electrocution, because air strikes, like electrocutions, carry a high probability of death or serious injury.

Trial court opinion, at 4. *See also Beary v. Container General Corp.*, 368 Pa.Super. 61, 533 A.2d 716 (1987).[4] *See Slater v. Pennsylvania Power Co.*, 383 Pa.Super. 509, 557 A.2d 368 (1989) (a supplier of electricity is required to exercise the highest degree of care practicable); *Kintner v. Claverack Rural Elec. Co-op., Inc.*, 329 Pa.Super. 417, 478 A.2d 858 (1984) (same). *See Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 7–15, 130 A.2d 123, 128–31 (1957).[5] *See*

---

**4.** In *Beary*, this Court stated:

A transmission line is a dangerous instrumentality and the law requires that the possessor of such instrumentality exercise *a high degree of care*. [Citations omitted].

Enigmatic as is the basic element of electricity, no one with the slightest mentality is ignorant of its vast potentialities for destruction. The degree of care required to protect people from this devastating element is no less than that required to prevent poisonous reptiles from breaking loose from their restraining enclosures. As the proprietor of ferocious beasts may not, by pleading excessive cost for confining them, escape liability for the loss of life occasioned by his savage wards, so also *the owner of high-voltaged electric machinery may not avoid responsibility for the devastation caused through his failure to adequately guard such uninhibited devices.* This court has declared that *when human life is at stake the rule of due care and diligence require everything that gives reasonable promise of its preservation to be done regardless of difficulties or expense.* [Citation omitted].

*Beary*, 368 Pa.Super. at 70–71, 533 A.2d at 720.

**5.** In *Stark*, decided one year after *Yoffee*, the Pennsylvania Supreme Court wrote:

Lehigh, on the other hand, *was bound* to know the degree of danger involved. Those handling electricity of high voltage are not only bound to know the extent of the danger but to use the very highest degree of care practicable to avoid injury to everyone who may be lawfully in proximity to such wires and liable to come accidentally or otherwise in contact with them. [Citations omitted].

*Densler v. Metropolitan Edison Co.*, 235 Pa.Super. 585, 345 A.2d 758 (1975).

For the foregoing reasons, we conclude that there was sufficient evidence that Penelec had notice of the dangerous condition. Furthermore, we find that there was ample evidence for the jury to conclude that the pilots in this case were not alerted properly as to the presence of certain transmission lines. The jury was free to surmise that the insufficient warning signs were the proximate cause of the helicopter crash. *See Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 11, 130 A.2d 123, 130 (1957) (stressing that "the question of what is the proximate cause of an accident is almost always one of fact for the jury."); *Pachesky v. Getz*, 353 Pa.Super. 505, 510 A.2d 776 (1986) (defines proximate cause). *See Vernon v. Stash*, 367 Pa.Super. 36, 46–47, 532 A.2d 441, 446 (1987).[6] Likewise, it was within the province of the jury to determine that Penelec did not meet its requisite standard of care,[7] properly classified by the trial court as a "high duty" standard. *Schriner v. Pennsylvania Power & Light Co.*, 348 Pa.Super. 177, 184–85, 501 A.2d 1128, 1131 (1985); *Colloi v. Philadelphia Electric Co.*, 332 Pa.Super. 284, 481 A.2d 616 (1984). Thus,

*Stark*, 388 Pa. at 8, 130 A.2d at 128. The court further held:
>In the erection of its poles and wires, Metropolitan was bound to anticipate only such combination of circumstances, and accidents and injuries therefrom, as it may reasonably forecast as likely to happen. [Citation omitted]. "In Pennsylvania, liability for negligence depends on the antecedent probability, not the mere possibility, of harmful results therefrom. The general test of liability is whether the injury imputed to the defendant is such that a person of ordinary intelligence would have foreseen it as the natural and probable outcome of his conduct." [Citations omitted].
>*Id.*, 388 Pa. at 14–15, 130 A.2d at 131–32.

6. *See Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978), *appeal after remand* 309 Pa.Super. 518, 455 A.2d 1204 (1982). *See also Harvilla v. Delcamp*, 521 Pa. 21, 555 A.2d 763 (1989); *Cummins v. Firestone Tire & Rubber Co.*, 344 Pa.Super. 9, 495 A.2d 963 (1985) (discussing negligence).

7. *See Crowe v. Nanticoke Light Co.*, 209 Pa. 580, 58 A. 1071 (1904) (a utility must take all practical precautions to prevent foreseeable injury or death, including the use of the latest available safety appliances and devices).

judgment n.o.v. was correctly denied as to the first two issues on appeal. For the same reasons, Penelec's motion for a new trial was properly denied. The trial court applied the law of this Commonwealth. There was no evidence of trial court error or abuse of discretion. *See also* Appellee's brief, at 26.[8] *See* Appellees' points for charge 3, 4, at R.54a.

Penelec advances as its third argument on appeal that a verdict should have been directed in its favor because it had no duty to warn Bailey and Muth of a condition that was open and obvious. The *Yoffee* case addresses this issue as well. Our Supreme Court stated:

> There *is* controversy in this case concerning the manner in which the accident happened—considerable controversy. The plaintiff contends that Levitz was killed because the defendant had strung its wires across the river in such a manner as to make them invisible to airmen. The defendant denies that this is true. The plaintiff further contends that the towers supporting the wires were hidden behind the topography and vegetation of the land and thus were not perceptible to pilots approaching the transmission line. This is also denied by the defendant. These two elements of factual controversy alone, aside from others in the case, render it impossible for a trial court to decide, as a matter of law, the proximate cause of the collision here involved.

*Yoffee*, 385 Pa. at 642, 123 A.2d at 642. *Yoffee* reiterates the long-standing principle that issues of a factual nature that are in dispute, must be resolved by the jury. *See also Ferrick Excavating and Grading Co. v. Senger Trucking Co.*, 506 Pa. 181, 484 A.2d 744 (1984); *R.P. Clarke Personnel, Inc. v. Commonwealth Nat'l Bank*, 384 Pa.Super. 524, 529–31, 559 A.2d 560, 563 (1989). Here, whether the condi-

---

**8.** The appellees objected to Penelec's attempts to submit its supplemental points for charge relating to the issue of notice after closing arguments were completed. Pa.R.Civ.P. 226(a). The trial court addressed the appellees' concern during trial. R.906a–913a. It also discussed the issue of notice in response to Penelec's motion for post-trial relief.

tion was open and obvious was a matter for the jury's determination. As the trial court noted, considerable evidence was offered at trial to aid the jury in deciding whether the 115Kv transmission line was visible at the time of the accident. The conditions were replicated by means of video reenactment. *See* R.210a, 212a, 217a–240a. Helicopters which followed the same route as Bailey and Muth filmed that path. Pilots who flew over the wires testified as to their perception of the field. Evidence was proffered by both sides concerning the condition, placement and effectiveness of the warning signs, including testimony as to their size, color, visibility and spread. It is apparent from the jury's verdict that the conditions were not "open and obvious." Thus, we find no merit to Penelec's third claim on appeal.[9] *See Carrender v. Fitterer*, 503 Pa. 178, 185–86, 469 A.2d 120, 124 (1983) (the question of whether a danger was known or obvious is usually one of fact for the jury; the question may be decided by the court where reasonable minds could not differ as to the conclusion).

 Similarly, we cannot conclude that the trial court erred in refusing Penelec's proposed jury instructions, numbers 16–19. The law on this point is established. A trial judge has wide latitude in instructing a jury. S/he may use any particular language, as long as the words sufficiently and fully convey the rules of law applicable to the case. *Pagesh v. Ucman*, 403 Pa.Super. 549, 589 A.2d 747 (1991); *Beary v. Container General Corp.*, 368 Pa.Super. 61, 78, 533 A.2d 716, 724 (1987). The jury will be instructed on different points of law depending on the given facts. "It is axiomatic that where there is a dispute as to what the relevant facts are, this dispute must be submitted to the jury along with instructions on points of law which, with a view to the evidence in the case, are relevant." *Ferrick Excavating and Grading Co. v. Senger Trucking Co.*, 506 Pa. 181, 190, 484 A.2d 744, 748 (1984). In reviewing a jury charge, this Court is bound to consider the

---

**9.** We note once more that in reviewing the denial of a motion for judgment n.o.v., we are bound to review the record in a light most favorable to the verdict winner. *Ingrassia, supra.*

instructions in their entirety and as a whole, against the background of the evidence. In so doing, we must determine whether any error was committed and if so, whether that error was prejudicial to the complaining party. *Beary, supra,* 368 Pa.Super. at 78, 533 A.2d at 724 (*citing Reilly by Reilly v. SEPTA,* 507 Pa. 204, 231, 489 A.2d 1291, 1305 (1985)).

Here, the requested instructions were as follows:

16. At low altitudes there is always danger of coming in contact with objects on the ground and this danger must be known to every pilot.

17. A pilot flying at an altitude of 125 feet is bound to know the danger of encountering obstacles on the ground.

18. One of the dangerous consequences to be reasonably apprehended in low flying is coming in contact with structures on the ground.

19. The Plaintiff Gordon R. Bailey as the pilot in command had an absolute duty to see and avoid objects on the ground which do not exceed 200 feet in height.

None of these instructions was necessary to better the trial court's jury charge. R.875a–906a. Proposed charges numbers 16–18 are not summaries of law. At best, they are statements of common knowledge. Moreover, they are misleading. It is unclear from the trial testimony whether a wire, suspended between two towers that are implanted in the ground, qualifies as an object on the ground. R. 862a–870a. There is also conflicting testimony as to whether the pilot was able to see the towers due to obstructions, trees, vegetation and landscape. The jury had ample evidence before it by which it could assess the pilot's performance capabilities. The jury was adequately charged on the legal principles. It was within its domain to apply the facts, as it discerned them, to the law of the case.

 Proposed point for charge number 19 is of no consequence. The jury evidently found that the pilot hit an object *in the air.* (The transmission wire hung between two towers at a height of approximately 80 feet. R.197a,

201a, 204a, 205a.) *See also* R.203a (the pilot hit the unmarked 115Kv line; the line being patrolled, identified as the 46Kv line, was patrolled safely). Moreover, if Penelec is implying that since the "objects on the ground" (the poles) did not exceed 200 feet, the pilot had a duty to avoid the wire which was suspended between the poles, its argument must fail. It is not clear whether the pilot actually saw the poles. R.601a, 754a–755a, 800a, 820a. Moreover, the condition of the poles, or the towers as the case may be, does not relieve Penelec from its duty to provide adequate warnings of line crossings. Finally, the jury was instructed as to the applicable Federal regulations and was told that a violation of the regulations constituted negligence per se. R.886a. We find no error in the trial court's jury instruction, which was complete and comprehensible. *See also* R.881a–883a (charge on contributory negligence); R.888a–891a (charge on comparative negligence). Therefore, Penelec's motion for a new trial on this point was rightly denied.

■ Penelec also argues that Bailey and Muth "assumed the risk" of injury when they undertook to fly the route, that they were reckless, and that Penelec was entitled to a directed verdict because Bailey and Muth violated Federal Aviation Regulations.

We note that there was conflicting testimony as to whether Bailey and Muth's conduct contravened Federal regulations. R.834a–847a. Thus, the jury was free to weigh and assess the testimony and to reach its own conclusions. Moreover, the trial court instructed the jury that a violation of the regulations constituted negligence per se. R.886a. The jury was also instructed on the Comparative Negligence Act. 42 Pa.C.S.A. § 7102, *et seq.* R.886a–891a. Following deliberations, the jury found that the pilot was 35% negligent. It was within the province of the jury to measure the pilot's degree of fault against that of Penelec. *See White by Stevens v. SEPTA,* 359 Pa.Super. 123, 137, 518 A.2d 810, 817 (1986). We find no error in the trial court's refusal to direct a verdict under these circumstances.

Moreover, there is no evidence to indicate that the pilot's actions were reckless. This appears to be a bald assertion on Penelec's part. Section 500 of the Restatement of the Law, Torts 2d, defines "reckless disregard of safety" as follows:

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Cf. Evans v. P.T.C.*, 418 Pa. 567, 212 A.2d 440 (1965); *Lewis v. Miller*, 374 Pa.Super. 515, 543 A.2d 590 (1988) (discussing wanton and willful misconduct, and recklessness). *See Stubbs v. Frazer*, 308 Pa.Super. 257, 260, 454 A.2d 119, 120 (1982) (Pennsylvania courts have adopted the standard for recklessness or wanton misconduct as set forth in the Restatement (Second) of Torts, § 500). Here, the evidence establishes that Bailey and Muth did not see the warning sign. R.545a–546a. There is no indication that they saw the sign and then consciously ignored it. We are compelled to agree with the appellees that "[i]t is obviously not recklessness to fail to see an inadequate warning." Appellees' brief, at 29.

Finally, Penelec suggests in its brief that the appellees "assumed the risk" of danger. This issue was not preserved in post-verdict motions nor was it addressed by the trial court. Therefore, it is waived. Pa.R.Civ.P. 227.1.

In any event, the jury considered the comparative negligence of Bailey and Muth and attributed 35% of the negligence to the pilot. This apportionment was reflected in the liability award. For these reasons, we find that the trial court properly denied Penelec's motion for judgment n.o.v. and its motion for a new trial based on its refusal to charge

on the law of reckless conduct.[10]

Penelec next contends that the appellees did not present evidence that the warning system failed. We find this issue to be without merit. Aside from the fact that ample evidence was presented from which the jury could conclude that the signs were inadequate,[11] the circumstances of this case clearly prove the appellees' point. It is obvious that the system was not effective. If it were, this case most likely would not be before us. *See Yoffee, supra. See also* R.212a, 263a–266a, 546a–551a, 277a–279a (discussing alternative methods of marking); R.348a–358a.

▆▆ Penelec claims that the trial court erred in denying its Point for Charge number 36, which would have instructed the jury that, under Federal regulations, the 115Kv line was not required to be marked with an orange sphere because it was under 200 feet in height. The orange sphere is commonly and widely accepted as a means of precaution

**10.** The requested points for charge, numbers 32–34, were as follows:
32. Reckless conduct is intentional acting or failing to act in complete disregard of a risk of harm to others which is known or should be known to be highly probable and with conscious indifference to the consequences. Reckless conduct is acting or failing to act when existing danger is actually known and with an awareness that harm is reasonably certain to result.
33. If you find that the Plaintiff Gordon R. Bailey violated 14 C.F.R. Section 91.3 in operating the aircraft in a reckless manner then the Comparative Negligence Statute is not applicable to the Defendant Pennsylvania Electric Company and the Plaintiff is barred from recovery.
34. If you find that the Plaintiff Gordon R. Bailey was reckless by acting in complete disregard of a risk of harm to others which is known or should have been known to him then the Comparative Negligence Statute is not applicable to the Defendant Pennsylvania Electric Company and the plaintiff is barred from recovery.

**11.** *See* Trial court opinion, at 6. Also, aside from Bailey's testimony, an expert who flew the route as a line patrol observer testified at trial that he was actively watching for the signs and could not or did not see any warnings to alert him that there were upcoming power lines. R.280a–281a, 545a–546a, 537a–542a, 550a–551a, 644a–647a, 650a. Absent credible or convincing testimony to the contrary, the jury was free to believe that the warning system was inadequate. *See also* R.282a.

against aircraft strikes. R. 151a–153a, 243a–252a, 275a–276a. The trial court cited *Yoffee* for the proposition that there is no reason, where preventable, that there should be *any* toll of human life. [. . . .] "When human life is at stake, the rule of due care and diligence requires everything that gives reasonable promise of its preservation to be done, regardless of difficulties or expense." [citation omitted] In comparison to the benefit of saving human life, the cost of a few cans of paint and a few electric bulbs would be negligible. And since the defendant company is engaged in the very manufacture and creation of electric current, the cost of the current needed to supply the desired illumination would be as insignificant as the cost of a few bread crumbs in a bakery.

*Yoffee*, 385 Pa. at 544–45, 123 A.2d at 650. *See* Trial court opinion, at 7. With the above holding in mind, we conclude that the jury was free to determine that Penelec's failure to use spherical line markers constituted negligence in this case. Notably, there was conflicting testimony at trial on the issue of whether the transmission line was required by statute or regulation to be marked. R.268a–273a. *See also* R.565a, 573a, 595a, 667a. Thus, it remained the jury's function to resolve the factual dispute based on the evidence presented and on credibility determinations. For these reasons, judgment n.o.v. and Penelec's motion for a new trial were properly denied relative to this claim.

 Penelec's final assertion of error concerns the award of delay damages. The arguments raised by Penelec have been repeatedly addressed and finally decided by our Supreme Court. *See Schrock v. Albert Einstein Medical Center*, 527 Pa. 191, 589 A.2d 1103 (1991); *see Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986) and its progeny. *See also Shellhamer v. Grey*, 390 Pa.Super. 122, 568 A.2d 224 (1989); *Novelli v. Johns–Manville Corp.*, 395 Pa.Super. 144, 576 A.2d 1085 (1990); *Dietrich v. J.I. Case Co.*, 390 Pa.Super. 475, 568 A.2d 1272 (1990). Unless or until the law changes, we are bound by the pronouncements of our Supreme Court. Pe-

nelec has asserted constitutional challenges to the validity of Pa.R.Civ.P. 238, but has not contested the computation of delay damages. Thus, we refer the parties to the *Schrock* holding and affirm the trial court's award of delay damages.

Orders affirmed.