2017 PA Super 33

| TAMMY GREELY, ADMINISTRATRIX OF THE ESTATE OF RALPH GREELY, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| WEST PENN POWER COMPANY AND WEST PENN POWER COMPANY D/B/A ALLEGHENY POWER | |
| Appellee | No. 1910 WDA 2015 |

Appeal from the Order entered November 9, 2015
In the Court of Common Pleas of Westmoreland County
Civil Division at No: 8428 OF 2010

BEFORE:  LAZARUS, STABILE, and STRASSBURGER,[*] JJ.

OPINION BY STABILE, J.:                    **FILED FEBRUARY 13, 2017**

Tammy Greely ("Appellant"), Administratrix of the Estate of Ralph Greely ("Greely"), appeals from the November 9, 2015 order entered in the Court of Common Pleas of Westmoreland County, making final that court's January 15, 2015 grant of summary judgment in favor of Appellees West Penn Power Company, d/b/a Allegheny Power, and West Penn Power Company (collectively "West Penn").  Appellant contends the trial court erred in its conclusion that West Penn did not owe a duty of care to Greely and in

---

[*] Retired Senior Judge assigned to the Superior Court.

failing to view facts in a light most favorable to Appellant as the non-moving party. We agree. Therefore, we reverse and remand.

As explained by the trial court, this action arises out of the electrocution death of Greely, a telecommunications cable installer and employee of U.S. Utility Contractor Company, Inc. ("U.S. Utility"). U.S. Utility was a subcontractor for Verizon Pennsylvania, Inc. ("Verizon"), which was hired by the Pennsylvania Turnpike Commission ("PTC") for a construction project involving State Route 43 in Uniontown, Pennsylvania. Greely was in the process of installing a telecommunications cable across a line of utility poles owned by West Penn when the cable bounced into, or came close to, West Penn's energized electrical conductor. When this occurred, electricity arced from the electrical line to the messenger cable, killing Greely. Trial Court Opinion ("T.C.O."), 1/15/15, at 2-3.

Appellant initiated an action against West Penn and Verizon for negligence, claiming *inter alia* that West Penn was negligent for failing to de-energize the power lines at the work site, failing to insure that the cables would be attached to the pole at sufficient distance from the power lines, failing to provide adequate space on its poles for safe attachment of the Verizon cable, failing to take protective measures, and failing to provide a safe work place for Greely. T.C.O., 1/15/15, at 4 (citing Appellant's Amended Complaint at ¶ 35). Following discovery, West Penn filed a motion for summary judgment, contending the evidence failed to support the

existence of any duty of care owed by West Penn to Greely.  The trial court agreed and granted West Penn's motion, dismissing with prejudice Appellant's Amended Complaint against West Penn.  T.C.O., 1/15/15, at 11. On February 10, 2015, the trial court denied Appellant's petition for reconsideration.

Verizon subsequently filed a motion for summary judgment.  Verizon and Appellant entered into a settlement agreement approved by the trial court in its order dated November 9, 2015.  With all claims against all parties resolved, Appellant filed this timely appeal challenging the trial court's grant of summary judgment in favor of West Penn.  The trial court did not order the filing of a Rule 1925(b) statement of errors complained of on appeal.  In compliance with Rule 1925(a), the trial court issued an order on December 3, 2015, indicating that the reasons for its January 15, February 10, and November 9, 2015 orders were detailed in its January 15, 2015 opinion.

Appellant presents eight issues for this Court's consideration:

1. Where Pennsylvania law imposes a duty of care on suppliers of electricity to use the highest degree of care practicable to avoid injury to all individuals lawfully in proximity of its electrical wires including when a supplier has knowledge of the dangerous conditions therein, did the [t]rial [c]ourt err as a matter of law when it held that [] West Penn did not owe any duty to [Greely], a telecommunications worker lawfully in proximity of a known dangerous condition, West Penn's electric wires stretching between two unusually distant and elevated telephone poles?

2. Where Pennsylvania law imposes a duty of care on suppliers of electricity to use the highest degree of care practicable to avoid injury to all individuals lawfully in proximity of its electrical wires including telecommunications workers, did the [t]rial [c]ourt err as a matter of law when it concluded [] West Penn did not owe any duty to [Greely], a telecommunications worker[] lawfully in proximity of West Penn's electrical wires?

3. Where the Pennsylvania Superior Court in **Densler v. Metropolitan Edison Co.**, [] 345 A.2d 758 (Pa. Super. 1975), reaffirmed the duty of care of suppliers of electricity to use the highest degree of care practicable to avoid injury to all individuals lawfully in proximity of its electrical wires including telecommunications workers, did the [t]rial [c]ourt err as a matter of law when it distinguished **Densler** because [] West Penn and [Greely] had no contractual relationship even though [Greely], a telecommunications worker, was lawfully in proximity of West Penn's wires?

4. Where the Pennsylvania Superior Court in **Densler v. Metropolitan Edison Co.**, [] 345 A.2d 758 (Pa Super. 1975), reaffirmed the duty of care of suppliers of electricity to use the highest degree of care practicable to avoid injury to all individuals lawfully in proximity of its electrical wires including telecommunications workers, did the [t]rial [c]ourt err as a matter of law when it distinguished **Densler** because Appellant alleged [] West Penn's negligence arose from a different breach of industry standards?

5. Where Pennsylvania law imposes a duty of care upon a supplier of electricity to use the highest degree of care practicable to avoid injury to all individuals lawfully in proximity of its electrical wires, did the [t]rial [c]ourt err as a matter of law in examining whether a duty was owed under **Althaus v. Cohen**, [] 756 A.2d 1166 (Pa. 2000)?

6. Where Pennsylvania law requires on a motion for summary judgment all facts to be viewed in a light most favorable to the non-moving party and the benefit of all factual inferences to be granted to the non-moving party, did the [t]rial [c]ourt err in applying **Althaus v. Cohen**, [] 756 A.2d 1166 (Pa. 2000)[,] by accepting [] West Penn's disputed factual contentions?

- 4 -

7. Where Pennsylvania law imposes a duty of care upon a supplier of electricity to use the highest degree of care practicable to avoid injury to all individuals lawfully in proximity of its electrical wires, did the [t]rial [c]ourt err as a matter of law in relying upon Indiana law which limits the duty of care owed by a supplier of electricity to utility employees to exercise reasonable care to avoid malfunction of equipment?

8. Where Pennsylvania law requires on a motion for summary judgment all facts to be viewed in a light most favorable to the non-moving party and the benefit of all factual inferences to be granted to the non-moving party, did the [t]rial [c]ourt err as a matter of law in accepting [] West Penn's disputed factual contentions and finding that, even if []West Penn owed [Greely] a duty of care [] West Penn did not breach that duty?

Appellant's Brief at 4-6.[1]   Although Appellant asks us to consider eight separate issues, those issues can be condensed into two claims of trial court error:  failure to recognize a duty of care owed by West Penn to Greely and failure to view all facts in a light most favorable to Appellant as the non-moving party.

In **Wright v. Eastman**, 63 A.3d 281 (Pa. Super. 2013), this Court explained:

Our standard of review of a trial court order granting summary judgment is well-settled:

---

[1] Appellant lists eight questions for our review. However, Appellant's argument is divided into five sections that do not correspond to the statement of questions presented.  We remind Appellant's counsel that Pa.R.A.P. 2119(a) directs that "[t]he argument shall be divided into as many parts as there are questions to be argued . . . ."

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. ***Capek v. Devito***, [564 Pa. 267], 767 A.2d 1047, 1048, n. 1 (Pa. 2001). As with all questions of law, our review is plenary. ***Phillips v. A–Best Prods. Co.***, 542 Pa. 124, 665 A.2d 1167, 1170 (1995).

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof ... establishes the entitlement of the moving party to judgment as a matter of law." ***Young v. PennDOT***, 560 Pa. 373, 744 A.2d 1276, 1277 (2000). Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. ***Pennsylvania State Univ. v. County of Centre***, 532 Pa. 142, 615 A.2d 303, 304 (1992).

***Murphy v. Duquesne Univ. of the Holy Ghost***, 565 Pa. 571, 777 A.2d 418, 429 (2001) (citations modified). When "it is not inconceivable that a reasonable mind could reach the conclusion that the defendant breached its [duty]," a claimant may not be denied submission of that question to a jury. ***Cox v. Equitable Gas Co.***, 227 Pa. Super. 153, 324 A.2d 516, 518 (1974). Moreover:

[T]he issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo.* This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

> ***Summers v. Certainteed Corp.***, 606 Pa. 294, 997 A.2d 1152,
> 1159 (2010) (citations omitted).

***Id.*** at 284.

Appellant argues that the trial court erred by failing to recognize a duty of care owed by West Penn to Greely. Appellant asserts that the courts of this Commonwealth have long recognized the high duty of care an electrical supplier owes to anyone who may be lawfully within proximity to its wires. Appellant's Brief at 27-35 (quoting and citing, *inter alia*, ***Bailey v. Pennsylvania Electric Co.***, 598 A.2d 41 (Pa. Super. 1991), *appeal denied*, 627 A.2d 177 (Pa. 1993); ***Stark v. Lehigh Foundries, Inc.***, 130 A.2d 123 (Pa. 1957); ***MacDougall v. Pennsylvania Light & Power Co.***, 166 A. 589, 591 (Pa. 1933); ***Fitzgerald v. Edison Electric Illuminating Co.***, 50 A. 161, 161-62 (Pa. 1901).). Appellant also relies on ***Densler v. Metropolitan Edison Co.***, 345 A.3d 758, 762 (Pa. Super. 1975), in which this Court expressly determined that "[t]he class of persons 'lawfully in proximity' to the wires . . . includes maintenance employees who work on or around the utility poles." Appellant's Brief at 34.

Rather than accept the recognized high duty of care owed by electric suppliers, the trial court embarked upon an analysis under ***Althaus ex rel. Althaus v. Cohen***, 756 A.2d 1166 (Pa. 2000),[2] to determine whether West

---

[2] The five-part test under ***Althaus*** considers the relationship between the parties; the social utility of the actor's conduct; the nature of the risk
*(Footnote Continued Next Page)*

Penn owed a duty of care to Appellant. The trial court determined that there were no genuine issues of material fact and that Appellant "cannot, as a matter of law, establish a duty of care on the part of West Penn under the facts of this case." T.C.O., 1/15/15, at 5. The trial court agreed with West Penn that the extent of the duty owed by an electrical supplier "is dictated by the facts of each individual case" and that **Densler**, which involved injuries to an employee of the power company's licensee, was distinguishable from the instant case. **Id.** However, as our Supreme Court explained in **Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.**, 106 A.3d 27 (Pa. 2014):

> As to the aspects of this litigation centered on the **Althaus** factors, we find these to be more relevant to the creation of new duties than to the vindication of existing ones. It is not necessary to conduct a full-blown public policy assessment in every instance in which a longstanding duty imposed on members of the public at large arises in a novel factual scenario. Common-law duties stated in general terms are framed in such fashion for the very reason that they have broad-scale application.

**Id.** at 40-41.

**Alderwoods** came to our Court on appeal from the trial court's grant of summary judgment. After conducting an **Althaus** analysis, the panel determined the appellant offered evidence that established a duty on the

*(Footnote Continued)* ————————————

imposed and foreseeability of the harm incurred; consequences of imposing a duty upon the actor; and the overall public interest in the proposed solution. **Althaus**, 756 A.2d at 1169.

part of the utility, a breach of that duty, and resultant damages. Therefore, we reversed the grant of summary judgment in favor of Duquesne Light and against the owner of a funeral home destroyed by a fire after utility workers reconnected external wires to the building following a power outage. **Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.**, 52 A.3d 347 (Pa. Super. 2012). Our Supreme Court affirmed, holding this Court did not err in finding that a duty existed on the part of the utility company, but noting that the **Althaus** assessment was unnecessary. **Alderwoods**, 106 A.3d at 42-43.

We conclude that the trial court's **Althaus** assessment was likewise unnecessary in the case before us. As noted above, an electric supplier's high duty of care to persons lawfully in proximity of the electrical lines has been recognized in this Commonwealth for well over a century.[3] More recently, this Court explained:

> Our courts have long recognized that the standard of care imposed upon a supplier of electric power, particularly when that power is supplied at high voltage, is among the highest recognized in the law of negligence, **Densler v. Metropolitan Edison Company**, 235 Pa. Super. 585, 345 A.2d 758 (1975); and that, while a supplier of electricity must exercise the highest degree of care, it is not an insurer against injury. **Skoda v. West Penn Power Company**, 411 Pa. 323, 191 A.2d 822

---

[3] **See, e.g., Bailey, supra; Stark, supra; Ashby v. Philadelphia Electric Co.**, 195 A. 887, 889 (Pa. 1938); **MacDougall, supra; Fitzgerald, supra.** In light of the fact the courts of this Commonwealth have recognized the existence of a duty, we also find the trial court's examination of, and reliance on, Indiana law unnecessary and unwarranted.

(1963); ***Kintner v. Claverack Rural Electric Co-operative, Inc.***, 329 Pa. Super. 417, 478 A.2d 858 (1984). In ***Karam v. Pennsylvania Power & Light Company***, 205 Pa. Super. 318, 322, 208 A.2d 876, 878 (1965), this Court unequivocally stated that "the salutary and well settled rule in this Commonwealth is that one using a dangerous agency or instrumentality is bound to exercise care commensurate with the danger. One maintaining a high voltage electric wire line is required to exercise the highest degree of care practicable." ***See also Stark v. Lehigh Foundries, Inc.***, 388 Pa. 1, 130 A.2d 123 (1957); ***Bosley v. Central Vermont Public Service Corporation***, 127 Vt. 581, 255 A.2d 671 (1969).

***Schriner v. Pennsylvania Power & Light Co.***, 501 A.2d 1128, 1131 (Pa. Super. 1985). Further:

> A supplier of electric current is bound not only to know the extent of the danger, but to use the very highest degree of care practical to avoid injury to everyone who may be lawfully in proximity to its wires, and liable to come accidentally or otherwise in contact with them. That a transmission line is a dangerous instrumentality is recognized everywhere. No matter where located it is a source of grave peril and the law requires that the possessor of such an instrumentality exercise a high degree of care.

***Colloi v. Philadelphia Elec. Co.***, 481 A.2d 616, 620 (Pa. Super. 1984) (quoting ***Densler***, 345 A.2d at 761) (internal citations and quotation marks omitted). "The 'very highest degree of care' incumbent upon a supplier of electric power includes, in appropriate circumstances, the duty to warn an independent contractor of non-obvious dangers inherent in working in close proximity with high-tension wires." ***Id.*** (citations omitted).

The conclusion that West Penn owed a duty to Greely is bolstered by the fact that West Penn was aware that Verizon would be attaching its lines to West Penn's poles in an area where the poles were approximately 400

feet apart on uneven terrain so that the poles were at different elevations. According to West Penn corporate designee, David Hawk, a normal span between poles would be 125 to 150 feet. Deposition of David Hawk, 7/12/12, at 33. He explained:

> If we get into 200 or 300 feet, there's an issue of sag on everybody's cables, on our cables, so when you attach, you know, that 40 inch or 42 inch clearance, or in this case it's over five feet of clearance at the pole, where you're safe. When you get out to that 300, 350 foot sag, it's not there.

*Id.* Further, Greely's co-worker, Barry Ingram, explained that due to the distance between the poles and the difference in elevation, it was "very hard to judge as in where the strand really is" and "you could really mess up by looking at it from the ground to see exactly how close you were to the power." Deposition of Barry Ingram, 1/24/14, at 47, 72.

In addition, representatives from West Penn and Verizon attended utility coordination meetings, discussed Verizon's plans to attach its lines to West Penn's poles, and walked the area together. Deposition of Daniel Wheatcroft, 9/30/13, at 15-21; Deposition of James ("Phil") Bartolotti, 8/1/13, at 41-42 Although the agreement between those parties required that Verizon complete a permit application before work was done, the permit in this instance was not submitted before the work was done and, in fact, was not submitted until some time after Greely's death. Wheatcroft Deposition at 22-24. However, the fact the permit was not submitted before

the work was done was not unusual. *Id.* at 23-24; Bartolotti Deposition at 130-31.

Also supporting Appellant's contention that West Penn owed a duty of care is Appellant's expert report. The August 22, 2014 report, authored by Gregory L. Booth, P.E. ("Booth Report"), characterized the span where the incident occurred as "peculiarly dangerous" because of the extreme distance and substantial difference in elevation between West Penn's poles. Booth Report, 8/22/14, at 8. In his report, Booth examined the roles played by West Penn, Verizon, and U.S. Utility in the events leading to Greely's death. With respect to West Penn, Booth concluded:

> West Penn neglected to abide by or enforce the provisions of the Agreement for joint use poles between West Penn and Verizon including, but not limited to, enforcing the application and permitting provisions. West Penn failed to meet the minimum standards of the [National Electrical Safety Code ("NESC")] including assuring that Verizon's facilities were being installed on the West Penn poles in compliance with the NESC. West Penn failed to stop the Verizon contractor work when it was apparent there was a clearance hazard and the likelihood of severe electrical injury or death.[4] If Verizon and West Penn had

_____

[4] James Crace, West Penn's coordinator of lines, testified that he was at the site of the incident and observed the U.S. Utility employees, including Greely, attempting to connect the telecommunications cables. He saw that Verizon's messenger cable was too close to one of the conductors and that it was bouncing to within six inches of West Penn's line. Greely was in the bucket truck, approximately 100 feet away. Crace indicated that he spoke with a U.S. Utility worker and told him the work should stop. Crace acknowledged that it was windy and he doubted Greely could hear him voice concerns to the U.S. Utility worker. Crace stated that the worker with whom he was speaking indicated that Greely "knows about that." As Crace started
*(Footnote Continued Next Page)*

- 12 -

followed the provisions of their Agreement and the NESC, Mr. Greely would not have been electrocuted. The messenger and cable on the day of the incident would have been much more than 36 inches away from the energized power and, to a reasonable degree of engineering certainty, would have [been] over 8 feet away on that day. The violations, actions and inactions of Verizon and West Penn constitute negligence, a failure to design the joint use line properly and were a proximate cause of Mr. Greely's death.

*Id.* at 23.

In **Wright, supra**, this Court considered the role of an expert's report in the context of a summary judgment motion. The Court looked to **Summers v. Certainteed Corp.**, 997 A.2d 1152 (Pa. 2010), in which our Supreme Court explained the standard of review regarding consideration of expert testimony in deciding a motion for summary judgment as follows:

It has long been Pennsylvania law that, while conclusions recorded by experts may be disputed, the credibility and weight attributed to those conclusions are not proper considerations at summary judgment; rather, such determinations reside in the sole province of the trier of fact, here, a jury. **In re Estate of Hunter**, 416 Pa. 127, 205 A.2d 97, 102 (1964) ("The credibility of witnesses, professional or lay, and the weight to be given to their testimony is strictly within the proper province of the trier of fact."). Accordingly, trial judges are required "to pay deference to the conclusions of those who are in the best position to evaluate the merits of scientific theory and technique when ruling on the admissibility of scientific proof." **Grady v. Frito–Lay, Inc.**, 576 Pa. 546, 839 A.2d 1038, 1045 (2003).

At the summary judgment stage, a trial court is required to take all facts of record, and all reasonable inferences therefrom, in a light most favorable to the non-moving party. **Toy v. Metro.**

(Footnote Continued) ────────────

to turn, he heard and then saw the arc. Greely then slumped in the bucket. Deposition of James Crace, 2/12/13, at 7-21.

- 13 -

*Life Ins. Co.*, [593 Pa. 20], 928 A.2d 186, 195 (Pa. 2007). This clearly includes all expert testimony and reports submitted by the nonmoving party or provided during discovery; and, so long as the conclusions contained within those reports are sufficiently supported, the trial judge cannot *sua sponte* assail them in an order and opinion granting summary judgment. Contrarily, the trial judge must defer to those conclusions, and should those conclusions be disputed, resolution of that dispute must be left to the trier of fact.

*Wright*, 63 A.3d at 292 (quoting *Summers*, 997 A.2d at 1161) (some citations omitted).

Here, the trial court's opinion does not reflect any consideration of the Booth Report. Instead, in the course of its *Althaus* assessment, the trial court concluded that "it was [Greely's] own conduct which caused the messenger strand to bounce in close proximity to the electrical line." T.C.O., 1/15/15, at 6. Not only is this an illustration of the trial court's failure to consider Appellant's expert report, it is also a reflection of the trial court's failure to view the evidence in a light most favorable to Appellant as the non-moving party.

Based on our review of case law and our review of the record in the light most favorable to Appellant, we conclude the trial court erred in its determination that West Penn did not owe a duty of care to Greely and erred by failing to view the evidence in a light most favorable to Appellant. Therefore, we reverse the trial court's order granting summary judgment in favor of West Penn.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  2/13/2017