J-A32028-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| RAY M. BOURGEOIS AND MARY ANN I. BOURGEOIS, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| SNOW TIME, INC. AND SKI ROUNDTOP OPERATING CORPORATION, | : | No. 1086 MDA 2017 |
| | | |
| Appellees | | |

Appeal from the Order Entered June 19, 2017
in the Court of Common Pleas of York County
Civil Division at No(s): 2015-SU-001900-71

BEFORE:     OTT, DUBOW, and STRASSBURGER,* JJ.

DISSENTING MEMORANDUM BY STRASSBURGER, J.:

**FILED AUGUST 14, 2018**

In this case, the learned Majority holds that the trial court correctly concluded that Appellants could not establish a claim for recklessness or gross negligence as a matter of law at the summary judgment stage.[1]

---

[1] Although Appellants also alleged ordinary negligence, the trial court determined that the release on the back of the season pass purchased by Appellants barred any ordinary negligence claims.  Trial Court Order Granting Summary Judgment, 6/19/2017, at 4-13.  Citing to ***Tayar v. Camelback Ski Corp., Inc.***, 47 A.3d 1190 (Pa. 2012) (holding that pre-injury releases of liability for reckless behavior are against public policy), the trial court held that the release in this case did not bar Appellants' claims for recklessness.  Trial Court Order Granting Summary Judgment, 6/19/2017, at 14.  It declined to address whether Appellants could release Appellees from liability for gross negligence, stating that even if they could not, the Appellants did not meet their burden of establishing gross negligence.  ***Id.*** at 22.  ***See Tayar***, 47 A.3d at 1199 n.7 (leaving for another day the question
*(Footnote Continued Next Page)*

---

*Retired Senior Judge assigned to the Superior Court.

Because I believe a reasonable jury could find that the facts constitute gross negligence and/or recklessness, I respectfully dissent. *See Albright v. Abington Mem'l Hosp.*, 696 A.2d 1159, 1164 (Pa. 1997) (holding that a court may only take issue of gross negligence away from jury and decide the issue as a matter of law "if the conduct in question falls short of gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence").

This case stems from an incident that occurred while Appellant Ray Bourgeois (Bourgeois) was snow tubing at Roundtop Mountain Resort (the Resort), which is owned and operated by Appellees. As described by the trial court, Bourgeois

> went down the hill on his stomach, [head first] on his tube, and proceeded to reach the run-out area at the bottom of the hill. To aid snow tubers in slowing down and stopping at the bottom of the hill, [Appellees] utilized deceleration mats. On his final run, [Bourgeois's] snow tube came into contact with a deceleration mat, causing his tube to come to an abrupt stop. [Bourgeois's] body continued forward in motion after his tube stopped, causing him to land [head first] into the snow. The resulting collision caused a hyperextension of [Bourgeois's] spinal cord in his neck that has left him quadriplegic with limited mobility from his neck down.

*(Footnote Continued)* ───────────────

of whether a release for gross negligence could withstand a public policy challenge). The only challenge Appellants present regarding the release on appeal relates to whether it applies to Appellee Snow Time, Inc. *See* Appellants' Brief at 5-7.

Trial Court Order Granting Summary Judgment,[2] 6/19/2017, at 2-3.

What the trial court refers to as "deceleration mats" are actually rubber anti-fatigue mats commonly used as a walking surface in commercial kitchens. Spahr Deposition, 7/14/2016, at 25; Weeden Deposition, 7/20/2016, at 64-65; Whitcomb Deposition, 9/1/2016, at 95-96. The Resort inherited some of the mats from another resort. Whitcomb Deposition, 9/1/2016, at 96. When the Resort needed additional mats, Matt Weeden, the manager of the tubing park at the Resort, testified that he attempted to match the mats in use and "asked [the Resort's] food and beverage guy where he got his and basically shopped around and compared the mats and figured out exactly what they were and ordered them." Weeden Deposition, 7/20/2016, at 65. The mats are not specifically designed for snow tubing. *Id.* Appellees used the mats to assist the snow tube rider to slow down at the bottom of the hill and to minimize collisions between a snow tube and people walking around at the bottom of the hill. Reichert Deposition, 7/13/2016, at 34-35; Whitcomb Deposition, 9/1/2016, at 81, 89.

The vinyl snow tubes used by the Resort have a written warning stating that the product is designed to be used on hills with no obstacles with adequate room to stop. Appellants' Brief in Opposition to Motion for Summary Judgment, 3/16/2017, at Exhibit E. Appellees never conducted

---

[2] The trial court labeled this 24 page document an Order, but it is actually an Order and Opinion.

any studies as to the effect of a vinyl tube encountering a rubber mat. Whitcomb Deposition, 9/1/2016, at 96. In 2004, Appellees added elevation to the snow-tubing hill in order to create a more fun experience for their customers. Whitcomb Deposition, 9/1/2016, at 53-54. When they did so, they extended the runout "a little bit," because making the hill higher resulted in the riders traveling faster down the hill and a farther distance at the bottom. *Id.* at 54-56.

Two of the safeties[3] testified that they are aware that the speed that riders travel depends on various factors, including weather conditions, the time of day, and the number of people going down a slope at a time. For example, riders went faster when it was colder. Spahr Deposition, 7/14/2016, at 34; Reichert Deposition, 7/13/2016, at 35-37. Nevertheless, the Resort did not measure speed other than by observation. The safeties and tubing supervisors determined when and how to use the mats depending on their observations of how the lanes were running, the speed riders were moving, and where the tubes were stopping, but there were no formal policies or procedures about when and how to use the mats. Reichert Deposition, 7/13/2016, at 35-38, 45; Whitcomb Deposition, 9/1/2016, at 98. The mats sometimes lay flat; sometimes they were folded. One of the tubing safeties observed that folded mats usually slowed down the rider

---

[3] Safeties are employees who monitor the snow tube course.

more than flat mats due to an increase in friction. Reichert Deposition, 7/13/2016, at 36.

Appellants obtained the opinions of two experts. The first, Mark A. Di Nola, is an expert in ski and snow tubing risk management. The second, Gordon Moskowitz, Ph.D., is a an expert in mechanical and biomechanical engineering.

Di Nola opined that Bourgeois was severely injured as a direct result of Appellees' deliberate actions, which include the following:

[1.] [Appellees'] conscious decision to employ an operationally reckless company policy mandating the deployment of deliberately placed folded anti-fatigue rubber mats at the bottom of the tubing hill as deceleration devices with explicit knowledge that the deliberately deployed folded anti-fatigue rubber mats were not designed or tested for use as deceleration devices[.]

[2.] [Appellees'] conscious decision to attempt to transfer the increased risks to their guests rather than make the tubing experience safer for consumers by eliminating the increased risk as they did only after [Bourgeois's] tragic incident, placing their corporate financial needs over the needs of their guests.

[3.] [Appellees] consciously deployed snow tubes and provided them to their patrons in a manner that directly violated the manufacturer's warning label by using the tubes on hill with deliberately placed obstacles that were set out in an attempt to offset the fact that the hill did not provide adequate room to stop.

[4.] [Appellees'] conscious decisions described above increased the risk of serious bodily injury to riders over and above those inherent in the activity of snow tubing in the Commonwealth of Pennsylvania.

[5.] [Appellees'] conscious decisions increased the risk of serious injury to riders over and above those inherent in the activity of

snow tubing in the Commonwealth of Pennsylvania and constitute an extreme departure from the ordinary standards of conduct for a ski area in the Commonwealth of Pennsylvania.

[6.] [Appellees'] conscious decisions increased the risk of serious injury to riders over and above those inherent in the activity of snow tubing in the Commonwealth of Pennsylvania and are a proximate cause of [Bourgeois's] injuries.

Di Nola Report, 3/15/2017, at 41-42.

Moskowitz opined, *inter alia*, that

\*\*\*

2. The use of folded anti-fatigue mats as a deceleration device would expose tube riders to the likelihood of their tube encountering a sudden abrupt stop, particularly when the mats were folded with the 'nubs' exposed to the surface of the tube.

3. The stopping effect of a tube encountering a folded anti-fatigue mat with nubs exposed should have been readily apparent to [Appellees] well before [Bourgeois's] accident of February 17, 2013.

4. Tube riders who travelled head [] first (on their stomachs) on 'fast' days would be subject to a greater risk of suffering injuries similar to those experienced by [] Bourgeois.

\*\*\*

6. Arranging the mats in a folded position enhances the risk of a sudden tube stop.

7. The variations in weather … would have resulted in [Bourgeois's] tubing experience being significantly faster at or around 3:00 p.m. when his accident occurred than [on Bourgeois's previous runs down the hill].

Moskowitz Report, 3/14/2017, at 20. Moskowitz also opined that

Appellees

knew or should have known that tubers traveling at a high rate of speed would find their tube brought to an abrupt stop when it encountered a folded mat, with that risk increasing further when the mat was folded with the nubs exposed to the bottom of the tube. Analysis indicates that a tube and rider in the prone position with [Bourgeois's] physical measurements, facing forward and traveling at approximately 15 mph would enter into a flipping motion upon contact with a folded mat due to the resulting friction and the fold. [B]ased upon the known weather conditions and [Bourgeois's] weight, his speed at the point of encountering the folded mat was well in excess of this speed.

*Id.* at 16.

After discovery closed, Appellees moved for summary judgment, arguing, *inter alia*, that Appellants failed to support claims for reckless conduct, because Appellants used the mats in a matter customary to the industry without incident up until the incident. Appellees' Motion for Summary Judgment, 2/14/2017, at ¶¶ 28-41; Appellees' Memorandum of Law in Support of Motion for Summary Judgment, 2/14/2017, at 17-20 (pagination supplied). Appellees later argued that the record also did not support a claim of gross negligence. Appellees' Reply Brief in Support of Motion for Summary Judgment, 3/31/2017, at 24. Appellees contended that Appellants' expert, Moskowitz, attributed Bourgeois's injuries to a "confluence of … interlinked events" and thus, Appellees would have no way of knowing or any reason to have known such events could have arisen to cause harm. *Id.* Appellants opposed Appellees' motion for summary judgment by presenting the evidence referenced *supra*.

As the Majority recounts, the trial court stated the following regarding its determination that Appellants failed to set forth evidence support their claims of gross negligence and recklessness:

> [Appellants] have not produced sufficient evidence to show that an industry standard exists for placing the mats at the bottom of hills for snow tubers. … The absence of any standard on the record makes it difficult for the [c]ourt to find that [Appellees] knew that their conduct of using deceleration mats to stop snow tubers in the runout area would be placing [Bourgeois] at a higher unreasonable risk of harm than if [Appellees] had placed mats in a different manner, selected to purchase a different kind of mat, or used a different method for stopping the snow tubers.

Trial Court Order Granting Summary Judgment, 6/19/17, at 18-19.

The trial court further found no evidence that Appellees "knew or had reason to know that folding the mats created an unreasonable risk of physical harm." *Id.* at 19. *See also id.* at 22-23 (discussing gross negligence).

Noticeably absent from the trial court's discussion is any mention of Appellants' expert reports. "At the summary judgment stage, a trial court is required to take all facts of record, and all reasonable inferences therefrom, in a light most favorable to the non-moving party." *Greely v. W. Penn Power Co.*, 156 A.3d 276, 282-84 (Pa. Super. 2017). This includes all expert reports. In fact, this Court has held that when a trial court's opinion does not reflect consideration of the non-moving party's expert reports, this is error as it signals a failure to consider all evidence of record in a light most favorable to the non-moving party. *Id.*

The Majority simply ignores the trial court's failure to consider Appellants' expert reports and undergoes its own analysis of the reports. It concludes that neither expert set forth a relevant standard of care and thus, the duty that Appellees failed to meet. Majority Memorandum at 8-10. The Majority dismisses the Moskowitz report entirely as irrelevant, and rejects the Di Nola report as conclusory. *Id.*

However, in my view, both experts satisfactorily assisted Appellants in establishing gross negligence and recklessness. Woven throughout the reports are detailed references to the way that Appellees grossly deviated from the standard of care. One cannot seriously dispute that Appellees owe their patrons, who are riding on a vinyl tube without a steering or stopping mechanism down a steep snow-covered hill on a course that Appellees designed, a duty to ensure that the patrons are able to stop safely without serious injury at the bottom. One hardly needs an expert to establish that placing a stationary object, which is designed for an entirely different use, in the path of a fast-travelling snow tube rider in the hopes of slowing down the rider could instead, under certain foreseeable conditions, cause the rider to stop abruptly and eject the rider in a manner resulting in serious injury. This is particularly the case when Appellees have not conducted or reviewed studies to determine the effect of placing the mat in the rider's path under various conditions. Further, a jury could find that risk of serious injury was substantially increased without a standardized method to measure riders'

specific speeds, assess conditions, or arrange the mats. Moreover, not only were the mats used by Appellees not designed for the purpose for which Appellees used them, they used the snow tubes in a manner that was contradicted expressly by the warning on the label – a label, by the way, which was illegible on Appellant's tube.

The trial court states "[t]here is no evidence that [Appellants] **were made aware of the risks** of folding the deceleration mats and no evidence that any other incidents happened on the day Plaintiff suffered his injury[,] which would have put [Appellants] on notice that the mats were a problem. Trial Court Order Granting Summary Judgment, 6/19/2017, at 20 (emphasis added). However, Appellants need not prove that Appellees actually were aware of the risks, just that Appellants had reason to know of facts which would lead a reasonable person to realize that the person's conduct creates an unreasonable risk of physical harm to another and that such risk is substantially greater than that which is necessary to make the person's conduct negligent. *Tayar*, 47 A.3d at 1200–01.[4]

---

[4] Specifically, our Supreme Court has endorsed the following standard for recklessness:

> [T]he Restatement (Second) of Torts defines "reckless disregard" as follows:
>
> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or **having reason to know of facts**

*(Footnote Continued Next Page)*

J-A32023-17

*(Footnote Continued)* ────────────────

**which would lead a reasonable [person] to realize**, not only that [the person's] conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make [the person's] conduct negligent.

Restatement (Second) of Torts § 500 (1965). The Commentary to this Section emphasizes that "[recklessness] must not only be unreasonable, but it must involve a risk of harm to others substantially in excess of that necessary to make the conduct negligent." *Id.*, cmt. a. Further, … the Commentary contrasts negligence and recklessness:

Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or **with knowledge of facts which would disclose this danger to any reasonable [person]**…. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.

*Id.*, cmt. g; see also AMJUR Negligence § 274 ("Recklessness is more than ordinary negligence and more than want of ordinary care; it is an extreme departure from ordinary care, a wanton or heedless indifference to consequences, an indifference whether or not wrong is done, and an indifference to the rights of others").

*Id.* (emphasis added).

- 11 -

In my view, Appellants have put forth enough evidence at this stage for the jury to decide the issue. I disagree with the sole focus of the Majority and trial court on the use of the folded mats, when that is but one piece of Appellants' claims. **See** Appellants' Brief at 45-47 (discussing the facts Appellees knew or should have known, including the conditions contributing to speeds as high as 30-35 miles per hour, the risk of serious injuries when a fast-traveling snow tube abruptly collides with an obstacle, the lack of sufficient run-out area, and the use of mats not designed for use in snow tubing).[5] Both experts explained the ways in which Appellees' conduct deviated from the standard of care, based upon the facts established through depositions of Appellees' employees and officers. It is clear to me that a jury could have determined that the series of conscious decisions made by Appellees worked together to create an unreasonable risk of physical harm to Bourgeois that was substantially greater than ordinary negligence. Therefore, I would reverse the trial court's grant of summary judgment and remand for trial.

---

[5] Suffice it to say that I also disagree with the Majority's assertion that Appellants abandoned their assertion that Appellees were reckless and grossly negligent in failing to provide adequate stopping or deceleration distance, Majority Memorandum at 8 n.4. Appellants' brief expressly references the lack of an adequate run-off area as being problematic. **See** Appellant's Brief at 45-47.